**K MART CORPORATION, INCORPO-
RATED, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF
REVENUE, Appellee.**

No. 14283.

Supreme Court of South Dakota.

Argued Jan. 17, 1984.

Decided March 7, 1984.

John S. Lovald of Duncan, Olinger, Srstka, Lovald & Robbennolt, P.C., Pierre, for appellant.

Gene R. Woodle, Asst. Atty. Gen., Pierre, for appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WOLLMAN, Justice.

K Mart appeals from a judgment affirming an order of the South Dakota Department of Revenue (Department) requiring payment of use tax on advertising supplements for the period April 1974, through December 1977. We affirm.

The corporate and general office for K Mart is located at Troy, Michigan. K Mart was audited by an auditor for the Multistate Tax Commission for sales and use tax for the audit period of April 1, 1974, through December 31, 1977. During that time period there were K Mart outlets in Aberdeen, Rapid City, and Sioux Falls, South Dakota.

K Mart is involved in two different types of advertising programs that relate to newspaper supplements. One program, the national roto program, is participated in by all the K Mart outlets. Mat printouts are produced in Troy, Michigan,[1] and sent to a publisher with whom K Mart contracts for twenty-six or twenty-seven weeks out of the year to produce the four-color supplement used in the national roto program. The publisher, which is located in a state other than Michigan or South Dakota, receives a distribution list from K Mart which sets forth newspapers to which the publisher is to send particular national rotos.

The other program, the regional roto program, involves a two-color supplement that is printed locally. These rotos are distributed a maximum of between twenty-six or twenty-seven times a year and are intended to take up the slack when the national roto is not printed. The contract to print these regional rotos is between K Mart and the printer. The K Mart stores are free to elect not to use the regional rotos.

During the period of the audit, K Mart had advertising contracts with the Sioux Falls *Argus Leader*, the *Rapid City Journal*, and the *Aberdeen American News* for the delivery of the national and regional rotos as a part of their newspapers on an agreed day of each week. The *Argus Leader* discounted costs incurred by K Mart for printing and shipping the advertising supplements from the rate it charged for advertisements appearing within the sections printed by the newspaper. The newspapers had editing rights over the advertising.

The advertising and market director for the Sioux Falls *Argus Leader* testified that after the supplements are shipped by the printer to his newspaper's docks, the mail room personnel incorporate the supplements within the newspaper. He also testified that "by and large" the K Mart advertising supplements are distributed with the *Argus Leader* on Wednesdays and Sundays. The *Argus Leader* distributes advertising supplements for other firms on these days, and the single copy sales are substantially greater on these days as compared to other days of the week. Exhibits of representative national and regional rotos bear a newspaper logo preceded by the words "supplement to."

In addition to the rotos shipped to be inserted into newspapers, 500 rotos are shipped by the printer directly to each full-size K Mart store and 250 rotos are shipped to each smaller K Mart store. K Mart does not contend that these advertisements should not have been taxed.

Following a hearing, Department found a deficiency of $12,774, which was assessed against K Mart as a use tax pursuant to SDCL 10–46–2 which provides:

1. K Mart pays use tax in Michigan for the production of these mat printouts.

An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after July 1, 1939, for use in this state at the same rate of percent of the purchase price of said property as is imposed by §§ 10–45–2 and 10–45–3 or amendment which may hereafter be made thereto.

Of the amount assessed, $8,525 represented the tax for out-of-state production of national roto advertising materials and $4,249 represented the tax for in-state production of regional advertising rotos.

K Mart contends that it is entitled to exemption from sales or use tax pursuant to the exemption for newspaper sales, SDCL 10–45–12.1, and the exemption for the use of newspaper print, SDCL 10–45–9. We do not agree.

Some jurisdictions have held that advertising supplements are an integral part of a newspaper and as such are entitled to the same exemption from sales or use tax as is the remainder of the newspaper. *See, e.g., Eagerton v. Dixie Color Printing Corp.,* 421 So.2d 1251 (Ala.1982); *Sears, Roebuck and Co. v. State Tax Comm'n,* 370 Mass. 127, 345 N.E.2d 893 (1976); *Daily Record Co. v. James,* 629 S.W.2d 348 (Mo.1982); *see also Friedman's Express, Inc., v. Mirror Transp. Co., Inc.,* 71 F.Supp. 991 (D.N.J.1947), *aff'd,* 169 F.2d 504 (3d Cir.1948) (comic supplement is "newspaper" within the exemption clause of the Interstate Commerce Act). Other courts have held that advertising supplements do not fall within the newspaper exemption from sales or use tax. *See, e.g., Ragland v. K Mart Corp.,* 274 Ark. 297, 624 S.W.2d 430 (1981); *Caldor, Inc. v. Heffernan,* 183 Conn. 566, 440 A.2d 767 (1981); *Wisconsin Dep't of Revenue v. J.C. Penney Co.,* 108 Wis.2d 662, 323 N.W.2d 168 (1982).

 Statutes exempting property from taxation should be strictly construed

in favor of the taxing power. *Application of Veith,* 261 N.W.2d 424 (S.D.1978). The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption. *Northwestern Pub. Serv. Co. v. Housing and Redev. Comm'n,* 320 N.W.2d 515 (S.D. 1982).

Although the taxation statutes do not define "newspaper," [2] several definitions can be found in the case law of other jurisdictions. After reviewing several definitions, the Supreme Court of Connecticut determined:

> All the definitions identify two common characteristics of a newspaper: (1) It is published at short, regular intervals, usually not exceeding a week, and (2) it routinely reports a myriad of topics so that it appeals, at least in part, to a wide spectrum of the general public.

*Caldor, supra,* 440 A.2d at 770–71.[3] The court in *Caldor* concluded that advertising supplements do not fall within the commonly accepted definition of a newspaper.

 We adopt the *Caldor* definition of what constitutes a newspaper and conclude that although the K Mart advertising supplements may satisfy the first requirement of the definition, the supplements, standing alone, do not satisfy the second requirement.

K Mart contends that the supplements are an integral or component part of the newspaper, and as such qualify for the newspaper exemption. In *Ragland v. K Mart Corporation, supra,* a case in which the facts are very similar to those in the case at hand, the Supreme Court of Arkansas considered the following six factors in determining that advertising supplements were not a component part of a newspaper:

1. K Mart owned and thus controlled the supplements until delivery, while the newspaper was merely paid for distributing the supplements.

---

**2.** We note that while SDCL 17–2–2 defines legal newspaper and newspaper of general interest, these definitions apply to the publication of legal and other official notices and are not controlling for purposes of tax exemptions.

**3.** For other cases defining "newspaper," *see: Christopher v. American News Co.,* 171 F.2d 275 (7th Cir.1948); *Friedman's Express, Inc. v. Mirror Transp. Co., supra; Hermenet v. Wykle,* 64 Misc.2d 57, 314 N.Y.S.2d 204 (1970).

2. The supplements were not prepared by the newspaper.

3. The supplements were not a regular feature of a newspaper inasmuch as they did not appear in each addition of a particular edition of a newspaper.

4. Instead of paying for the insertion of the advertising supplement, the newspaper is paid for distributing the advertising supplements.

5. Instead of bearing only the logo of a specific newspaper, the advertising supplements bear a logo which is preceded by the words "supplement to."

6. The advertising supplements are sometimes offered as free handouts at the stores in addition to being distributed within the newspaper.

Those factors are also present to a substantial degree in the case at hand. In light of this fact and the principle that exemption statutes should be strictly construed in favor of the taxing power, we join those courts which hold that advertising supplements are not a component part of a newspaper for tax exemption purposes. Having concluded that K Mart is not entitled to the exemption for newspaper sales, we further conclude that it is not entitled to the exemption for the use of newspaper print.

K Mart contends that imposition of the use tax is statutorily and constitutionally impermissible inasmuch as there was no use or consumption by it of the advertising supplements within the state. K Mart argues that from the time the supplements are printed it exercises no control over them. We do not agree. Rather, we agree with Department's position that K Mart "uses" the supplements within the state within the meaning of SDCL 10–46–2 by virtue of its ownership of the supplements and its power to determine the date of distribution and the number of copies to be distributed. *See Wisconsin Dep't of Revenue v. J.C. Penney Co., supra.*

Likewise, we are not persuaded by K Mart's argument that there was a constitutionally insufficient nexus between it and the transaction sought to be taxed. Under our holding in *Matter of Sales Tax or Use Tax,* 290 N.W.2d 865 (S.D.1980), and the United States Supreme Court's holding in *National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), the state need only show a definite link between the state and the entity it seeks to tax. Here, K Mart was operating retail stores in three cities within the state during the period covered by the audit. The control it exercised over the supplements and the relationship between supplements and those stores constituted a nexus sufficient to satisfy constitutional due process requirements.

We have considered K Mart's remaining contention and find it to be without merit.

The judgment is affirmed.

All the Justices concur.