■ In the Matter of TWIN COAST NEWSPAPERS, INC., Petitioner, v STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a sales and use tax assessment for the period March 1, 1975 to May 31, 1978. ¶ In addition to a daily world trade newspaper and two weekly newspapers (an import and export bulletin), petitioner also publishes the Transportation Telephone Tickler (TTT), the Directory of United States Importers and the Directory of United States Exporters (Directories), the Import Special Information Service (ISIS) and the Export Information Tabulation (EXIT). Following an audit and subsequent hearing, respondent determined that sales and use taxes were due upon receipts of petitioner's sales of the TTT, Directories, ISIS and EXIT for the period March 1, 1975 through May 31, 1978, giving rise to this CPLR article 78 proceeding challenging that determination. ¶ Petitioner's first contention, that the ISIS and EXIT reports are newspapers entitled to an exemption from sales and use taxes (Tax Law, § 1115, subd [a], par [5]), or alternatively, as personal information services (Tax Law, § 1105, subd [c], par [1]), is unpersuasive. Petitioner correctly asserts that the regulations which now provide comprehensive criteria for exemption qualification as newspapers or periodicals (see 20 NYCRR 528.6 [b], [c]) were promulgated in 1979, subsequent to the period here in issue. We are not without guidance, however, for in a similar case, *Matter of G & B Pub. Co. v Department of Taxation & Fin.* (57 AD2d 18, mot for lv to app den 42 NY2d 807), this court instructed that "resort to a test of common understanding" be used in determining whether published material qualified for sales and use tax exemption as a newspaper or periodical (*id.,* at p 20). By using this test, we can readily ascertain that the ISIS and EXIT reports are computer printout sheets composed entirely of statistical data which has been extracted from the import and export bulletins. There are no news articles or expressions of opinion, editorial or otherwise, and accordingly, respondent correctly held that they were not newspapers. Nor are we persuaded by petitioner's contention that ISIS and EXIT are exempt as information of a personal or individual nature (Tax Law, § 1105, subd [c], par [1]) because they are compiled for specific subscribers. Petitioner admits the information is merely a distillation from the import and export bulletins in which the same information is contained and available to everyone. Although each subscriber selects the statistics he desires, the information furnished is not of the uniquely personal nature contemplated by the exemption (cf. *Matter of New York Life Ins. Co. v State Tax Comm.,* 80 AD2d 675, affd 55 NY2d 758 [confidential investigative detective reports on life insurance applicants]). ¶ Turning to petitioner's contention that the TTT and the Directories are exempt as periodicals (Tax Law, § 1115, subd [a], par [5]), we again disagree. The same "test of common understanding" (*Matter of G & B Pub. Co. v Department of Taxation & Fin., supra*), when applied, shows that none are published an appropriate number of times a year or contain requisite news stories or editorial content on any single subject to qualify as a periodical. Respondent properly found that the rigid standardized format composed almost entirely of listings and statistical data does not qualify as a periodical (see *Houghton v Payne,* 194 US 88; *Matter of Business Statistics Organization v Joseph,* 299 NY 443). Great deference must be accorded respondent's construction of the term "periodical" as it is used in the statute (*Matter of Standard Rate & Data Serv. v State Tax Comm.,* 72 AD2d 659, 660,

mot for lv to app den 48 NY2d 612; *Matter of Conde Nast Pub. v State Tax Comm.,* 51 AD2d 17, app dsmd 39 NY2d 942). ¶ In sum, we find respondent's determination denying exemptions as newspapers, periodicals and/or as information of a personal or individual nature is rational (*Matter of Howard v Wyman,* 28 NY2d 434) and supported by substantial evidence in the record (*Matter of Grace v New York State Tax Comm.,* 37 NY2d 193). ¶ Finally, we reject petitioner's constitutional arguments that the determination is an infringement on freedom of the press and a denial of equal protection. Not all regulation of the press is prohibited by the First Amendment. The State may subject newspapers to generally applicable economic regulations without infringing on any constitutional protections (see, e.g., *Citizen Pub. Co. v United States,* 394 US 131; *Breard v Alexandria,* 341 US 622). Reliance upon the recent case of *Minneapolis Star & Tribune v Minnesota Comr. of Revenue* (460 US 575) is misplaced. There, the Supreme Court held that the imposition of a special use tax upon paper and ink products consumed in the production of a newspaper, which exempted the first $100,000 of such costs, was a violation of the First Amendment. The tax effectively singled out the press and further targeted only a small group of users of substantial quantities of taxable products who would ultimately have to pay. This presented a danger of censorial effect implicit in a tax that singles out the press, and also created "the possibility of subsequent differentially *more burdensome* treatment" (*id.,* at p 1374; emphasis in original). That situation has no parallel here, where all publications of a similar nature are taxed and respondent's refusal to classify all of petitioner's publications as newspapers neither singled out nor targeted petitioner for different treatment. States traditionally have great leeway in design of taxing impositions and classifications (*Matter of Long Is. Light Co. v State Tax Comm.,* 45 NY2d 529, 535). We, therefore, find no basis in petitioner's constitutional claims. ¶ Determination confirmed, and petition dismissed, without costs. Main, J. P., Casey, Weiss, Levine and Harvey, JJ., concur.