In the Matter of the State Sales and Use Tax Liability for SIOUX FALLS NEWSPAPERS, INC., License No. 51–12054–OS Sioux Falls Newspapers, Inc., Licensee and Appellee,

and

Lewis Drugs, Inc., Intervenor,

v.

SECRETARY OF REVENUE, and The South Dakota Department of Revenue, Licensor and Appellant.

No. 15855.

Supreme Court of South Dakota.

Argued Jan. 14, 1988.

Decided April 27, 1988.

Rehearing Denied June 6, 1988.

Jon E. Arneson, Sioux Falls, for licensee and appellee.

Rita D. Haverly of Hagen & Wilka, P.C., Sioux Falls, for intervenor.

Gene R. Woodle, Asst. Atty. Gen., Pierre, for licensor and appellant; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

SABERS, Justice.

The Department of Revenue (Department) appeals a circuit court decision which reversed an administrative determination of sales tax on retail printing charges and use tax on syndicated materials. We agree with Department's assessment of sales tax on printing charges but disagree on use tax on syndicated materials.

### Facts

Department conducted a sales and use tax audit of the Sioux Falls Argus Leader (Argus) for the years 1982, 1983, and 1984. Argus was assessed additional tax and interest for sales and use during this period. The taxes were paid under protest and Argus sued to recover the assessed taxes. An administrative hearing was held on April 15th, 1986. Secretary (who did not attend the hearing) entered an order upholding the assessment. Argus appealed two issues to the circuit court: (1) the assessment for the four-page printed advertising insert sold to Lewis, and (2) the assessment for use tax on syndicated material utilized by Argus. The circuit court reversed the decision of Secretary. The circuit court held that the transactions between Argus and Lewis were tax exempt as a sale of advertising services under SDCL 10–45–12.1 and ARSD 64:06:02:03, and as newspaper sales under SDCL 10–45–12.1. The circuit court held that Argus' use of syndicated material was a nontaxable resale use under SDCL 10–45–1(5) and SDCL 10–46–1(2) and a tax exempt use under SDCL 10–46–9. Department appeals.

### Findings of Fact and Scope of Review

Department appears to be claiming, not that some of the circuit court's findings are per se erroneous, but that the findings are not based upon the record developed at the administrative agency level. A review of the transcript of the administrative hearing and the exhibits show that the circuit court's findings are based upon direct evidence presented at the hearing (or reasonable inferences therefrom) and stipulations between the parties.

■ Whether a statute imposes a tax under a given set of facts is a question of law. *Modern Merchandising, Inc. v. Department of Revenue*, 397 N.W.2d 470, 471 (S.D.1986).

"Resolution of this dispute depends upon the interpretation and application of statutes. Because this is a question of law, we accord no deference to the conclusions reached by the Department or the circuit court. (*citing Permann v. Dept. of Labor*, 411 N.W.2d 113, 117 (S.D. 1987))"

*In the Matter of the State Sales and Use Tax Liability of Townley*, 417 N.W.2d 398, 399 (S.D.1987).

### 1. SALES TAX LIABILITY FOR PRINTING CHARGES

SDCL 10–45–2 imposes "upon the privilege of engaging in business as a retailer, a tax of four percent upon the gross receipts of all sales of tangible personal property consisting of goods, wares, or merchandise, ... sold at retail in the state of South Dakota to consumers or users." Department contends that the four-page printed advertising supplement produced by Argus at the direction of Lewis is tangible personal property and as such is subject to the imposition of tax under SDCL 10–45–2. Argus argues that there must be a *sale* of tangible personal property in order to have a taxable event under SDCL 10–45–2. Department argues that there was a sale of tangible personal property. Department's position is that the advertising inserts are tangible property and that Department assessed tax only on that portion of Argus' charges to Lewis which were determined to be printing costs. No assessment was made on that portion of the charge determined to be for advertising services.

SDCL 10–45–2 imposes a 4% tax on the gross receipts of all sales of tangible personal property sold at retail. The third paragraph in ARSD 64:06:02:03 provides that sales tax applies to the gross receipts from sales of tangible personal property to persons providing advertising services. Included in these sales are the sale of paper, ink, type composition charges and printer's

**808**

production charges. Argus, acting as printer, made a sale of tangible personal property to Lewis. Department seeks to impose tax on Argus' retail sales, as a commercial printer, to Lewis. In essence, Department severed the amount charged by Argus into two components—one taxable, one exempt. The cost of the sale of tangible personal property is separate and divisible from the cost of the sale of advertising services.

## A. Exemption From Sales Tax Liability For Advertising Services

■ Argus asserts that any tangible property produced was merely incidental to the advertising service performed by Argus for Lewis. Argus also cites to SDCL 10–45–12.1 which exempts advertising services from the operation of the sales tax.

Argus cites to Department's own regulation, ARSD 64:06:02:03 and Department's own published guidelines to substantiate its argument that charges for advertising in newspapers are not taxable.[1] There is no question that regular newspaper advertising, such as classified, quarter page, and full page ads are within the scope of the exemption. Argus contends that these advertising supplements should be treated similarly. Argus argues that differences in size and color of advertisements are distinctions which do not change the nature of the activity or the transaction. However, Argus overlooks the third paragraph of ARSD 64:06:02:03 which states, "[s]ales tax applies to gross receipts from sales of tangible personal property[.]" (*See* footnote 1.)

There was a tangible product produced in this case. Argus argues that it is exempt from sales tax on the printing charges. As we have said many times, tax exemption statutes are construed strictly against the person claiming exemption. *Matter of Townley, supra* at 400. Argus' printing transactions with Lewis are equivalent to the commercial printing transactions held taxable in *K Mart Corp., Inc. v. S.D. Dept. of Revenue,* 345 N.W.2d 55 (S.D.1984). It is the similarity in the *transactions* and not the character of the participants upon which we must focus. Regardless of whether Argus is characterized as a printer, an advertising service or a newspaper, its transactions with Lewis in printing the inserts were those of a retailer selling tangible personal property to a consumer.

## B. Exemption From Sales Tax Liability For Newspaper Sales and Subscriptions

■ Department contends that these advertising inserts cannot be exempt as a sale of newspapers under SDCL 10–45–12.1. It relies upon this court's decision in *K Mart, supra,* where this court adopted a definition of what constitutes a newspaper from *Caldor, Inc. v. Heffernan,* 183 Conn. 566, 440 A.2d 767 (1981). The court in *Caldor* found two particular factors to be characteristic of a newspaper: (1) newspapers are published in short, regular intervals of usually no more than one week, and (2) they report on many topics of interest to

---

1. ARSD 64:06:02:03 states:

> Advertising services are the business of preparing advertisements for publication in newspapers, magazines, or handbills or for broadcast and welcoming services which contact new residents and others to explain business services within the area and leave promotional literature.
>
> Charges for advertising in newspapers or magazines are not taxable. Likewise, charges made by advertising agencies for preparing and placing advertising in advertising media are charges for services and therefore not taxable.
>
> Sales tax applies to gross receipts from sales of tangible personal property to persons providing advertising services for use and consumption in preparing advertisements. Tax applies to the following: paper; ink; paint; tools; office supplies; type; art work purchased from independent artists; compositor's charges for setting copy in type and art work plate in form; engraver's charges for making metal plates; electrotyper's charges for making electrotypes or matrices; and charges by printers for production of pamphlets, booklets, brochures, and other material printed by them.

Guideline ST–132 provides:

> The services of advertising is not within the services selected for taxation. Charges for advertising in newspapers, ... are charges for service and ... not taxable. Likewise, charges by advertising agencies for preparing and placing advertising in the media are not taxable.

the general public. The court in *K Mart* found that although the preprinted advertising supplements might satisfy the first requirement of this definition they did not, *standing alone*, satisfy the second requirement. The court in *K Mart* was considering the taxability of supplements printed by a commercial printer and delivered to the newspaper for distribution with the newspaper.

In *Daily Record Co. v. James*, 629 S.W. 2d 348 (Mo.banc 1982), the court distinguished supplements printed by the newspaper and billed to the advertiser, which were held to be nontaxable services, from supplements printed by a commercial printer at the direction of the advertiser and then shipped directly to the newspaper for incorporation and distribution. *See also Sears, Roebuck and Co. v. State Tax Commission*, 370 Mass. 127, 345 N.E.2d 893 (1976). The *Daily Record* court went on, however, to find that the character of the printer was an inappropriate focus. This point was echoed in *Eagerton v. Dixie Color Printing Corp.*, 421 So.2d 1251 (Ala. 1982), where the court stated that they could see no reason why "the tax consequences of identical transactions should differ, based entirely and solely on who makes the purchase" and that "[i]t is the transaction which is taxable and not the identity of the purchaser." *Id.* at 1253–1254. We agree. As noted above, determinations of taxability should focus on the transaction. Because we held tax was correctly imposed on an equivalent transaction in *K Mart, supra*, we hold that tax was correctly imposed here.

■ The advertising inserts, printed on yellow newsprint and appearing in Argus on Wednesdays and Sundays, are not entitled to an exemption as sales of newspapers. The inserts were merely added to and distributed with the newspaper. Only sales of newspaper to the reader/consumer are exempt under the newspaper sales exemption and Argus is not selling newspapers to Lewis. To hold otherwise would constitute unfair discrimination in favor of a newspaper and against a printer based on a purely artificial distinction, i.e., who is doing the printing?

In *K Mart, supra*, the taxpayer also contended that the supplements were an integral or component part of the newspaper and should qualify for the exemption. This court cited *Ragland v. K Mart Corp.*, 274 Ark. 297, 624 S.W.2d 430 (1981), for six factors to be utilized in determining whether advertising supplements were a component part of a newspaper. The six factors identified by the *Ragland* court were: ownership, preparation, regular feature, privity of contract, logo, and distribution. Argus claims that there are factual differences between this case and *K Mart, supra*. Even if such factual distinctions exist, Argus misapprehends the analysis in *K Mart, supra*. The *Ragland* factors were simply tools to aid in answering the component part test. We held in *K Mart, supra*, that advertising inserts were not component parts of a newspaper. They still are not.

In summary, SDCL 10–45–12.1 exempts from tax "... newspaper sales and subscriptions...." It is obvious that the tax here is imposed on the sale to Lewis of tangible personal property—printed inserts —and not on newspaper sales or subscriptions. Therefore, the exemption does not apply.

*C. Imposition Of Tax On These Transactions Is Not Prohibited By The State Or Federal Constitution or by SDCL 10–45–9 because the tax applies equally to all retailers*

Department and intervenor Lewis each charge that the other raises the constitutionality issue. Lewis cites *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936), for the rule that the imposition of taxes which abridge freedom of the press are unconstitutional. Lewis then argues that because newspapers derive a substantial portion of their revenue from advertising, the imposition of tax on newspaper advertising "could have a devastating effect on First Amendment freedoms."

■ It is not necessary for this court to address the constitutionality question as

raised nor SDCL 10–45–9.[2]  State statutes exempt advertising services from taxation, regardless of whether a newspaper or some other business provides the service. The transactions here are retail sales, therefore tax is imposed—not because the taxpayer is a newspaper, but because *all* retailers in the state are subject to the tax imposed.  In addition, only that portion assigned to printing costs as opposed to advertising services was subject to the tax.

### 2. USE TAX LIABILITY FOR SYNDICATED MATERIALS

Department claims that the paper containing syndicated material which is received and used by Argus is tangible personal property and is taxable under SDCL 10–46–2.

SDCL 10–46–2 provides:

An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased ... for use in this state at the same rate of percent of the purchase price of said property as is imposed by §§ 10–45–2 and 10–45–3. . . .

Argus makes several arguments.  First, it contends that the syndicated materials are not the pieces of paper which are received but the intangible information on that paper which is merely transferred by means of a tangible medium.  Argus claims that the pieces of paper have no inherent value independent of the information imprinted upon them.  Second, Argus argues that the use of syndicated materials is a nontaxable resale use under SDCL 10–46–1(2), SDCL 10–45–1(2), and SDCL 10–45–1(5).  Third, Argus claims the use is exempt under SDCL 10–46–9.

2.  SDCL 10–45–9 provides:
There are hereby specifically exempted from the provisions of this chapter and from the computation of the amount of tax imposed by it, the gross receipts from sales of tangible personal property which this state is prohibited from taxing under the Constitution or laws of the United States or under the Constitution or laws of the state of South Dakota.

3.  "The use tax complements and supplements the sales tax (citations omitted) by imposing upon those subject to it a tax burden equal to the sales tax in order that property sold or utilized in this state would be taxable once for support of state government."  *Northwestern*

### A. Tangible Personal Property

■  It is not necessary for us to determine whether intangible *information* may be severed from the tangible medium of transmission.  The items involved in this assessment are not raw information, but the tangible end product of an individual's skills.  *See Columbia Pictures Industries, Inc. v. Tax Commissioner*, 176 Conn. 604, 611, 410 A.2d 457, 461 (1979).  Columns, features, and editorials such as those written by Art Buchwald, Ann Landers, Erma Bombeck, Sylvia Porter, George Will, and Ellen Goodman, are not just rote reporting of current news events; they are the finished product of a writer's skills.  Likewise, the comics are the finished product of an artist's or writer's skills.  Therefore, we hold that these syndicated materials are tangible personal property.

### B. Nontaxable resale use under SDCL 10–46–1(2), SDCL 10–45–1(2), and SDCL 10–45–1(5)

■  SDCL 10–46–1 mandates the meanings to be given to terms used in this section of the code.  SDCL 10–46–1(2) provides, in part, that the term "use" does "not include the sale of ... [tangible personal] property in the regular course of business."  We understand this to mean that use tax, consistent with its complementary relationship to sales tax, generally applies to retail transactions and not to transactions where items are purchased for resale.[3]  This interpretation is supported by the fact that SDCL 10–46–2 makes direct reference to SDCL 10–45–2—the complementary sales tax provision applicable to retail sales.[4]

*National Bank of Sioux Falls v. Gillis*, 82 S.D. 457, 467, 148 N.W.2d 293, 298 (1967).  *See* 68 Am.Jur.2d *Sales and Use Tax* § 171.  "The compensatory use tax is levied on property used within the state if that property would have been subject to sales tax if purchased within the state."  Comment, "Imposition of the Duty to Collect State Use Taxes: Constitutional Prohibitions are No Longer Valid in Mail Order Sales," 32 S.D.L.Rev. 93, 94 (1986).

4.  It should also be noted that SDCL 10–46–1(5) defines "[t]angible personal property" as tangible goods, wares and merchandise furnished to the ultimate consumers or users, and that SDCL

With this in mind, the issue is whether the syndicated materials purchased by Argus were purchased for resale, i.e., for sale in the regular course of business. Department argues that Argus uses these materials and that Argus sells newspapers, not syndicated materials. We believe Department is attempting to broaden the meaning of the statutes beyond legislative intent. Although Argus sells newspapers, "expressions of opinion, editorial or otherwise" are an inextricable part of the definition of a newspaper. *Twin Coast Newspapers, Inc. v. State Tax Comm'n,* 101 A.D.2d 977, 977, 477 N.Y.S.2d 718, 719 (A.D. 3 Dept.1984); *Ragland, supra,* 624 S.W.2d at 431; *Caldor, supra,* 440 A.2d at 770. While Department correctly claims that advertising supplements are not newspapers, the various news articles, columns, and editorials are the very essence of what has been traditionally perceived as a "newspaper." Argus does not purchase these syndicated materials for personal use.[5] After the materials are received, they are photographed, the image from the film is transferred to the newsprint, and the actual pieces of paper received are discarded. The syndicated materials are purchased by Argus with the intent to repro-duce them in the newspaper to sell to readers. Therefore, these syndicated materials, if not the paper they are transmitted on, are an essential part of the newspaper and are purchased for resale in the ordinary course of Argus' business.[6] We hold that the purchase of syndicated materials by Argus was a nontaxable resale use under SDCL 10–46–1(2). Therefore, we affirm the trial court's reversal of the assessment on these materials and it is not necessary to reach the issue of the claimed exemption under SDCL 10–46–9.

MORGAN and MILLER, JJ., concur.

WUEST, C.J., concurs in part and dissents in part.

HENDERSON, J., dissents.

WUEST, Chief Justice (concurring in part and dissenting in part).

I concur, except for the holding of the majority that Argus's transaction with Lewis in printing the inserts were those of a retailer selling tangible personal property to a consumer. The majority relied upon our decision in *K Mart* which cited *Caldor* for the characteristics of a newspaper. However, the following chart illustrates the facts are different in many respects.

| K Mart | Lewis |
|---|---|
| 1. K Mart owned and thus controlled the supplements until delivery, while the newspaper was merely paid for distribution. | 1. Lewis never owned "inserts" that were in the newspaper; the advertising was Argus Leader property until delivery to subscribers. |
| 2. The supplements were not prepared by the newspaper. | 2. Lewis's advertising was prepared by the Argus. |
| 3. The supplements were not a regular feature of a newspaper. | 3. Lewis's four-page advertising was a fairly regular, semi-weekly feature of the Argus. |

10–46–1(6) and (7) define "[r]etailer" and "[r]etailer maintaining a place of business in the state." We interpret these statutes to be further support for the view that the state use tax applies, generally, to retail transactions.

**5.** By contrast, magazines, periodicals, books, and other informational materials purchased by Argus to assist its staff in their work are tangible personal property purchased for use by Argus and taxable. Taxes were assessed on this type of material in this case, but not appealed by Argus.

**6.** It appears to us that Department's real dispute is that sale of newspapers is exempt under SDCL 10–45–12.1.

The fact that no sales tax is paid on newspapers does not necessarily mean that a use tax is imposed on the items which are used in the processing of the newspapers, if such items are exempt from such tax by the provisions of the use tax law [or are nontaxable as a resale]. *Bismarck Tribune Co. v. Omdahl,* 147 N.W.2d 903, 906 (N.D.1966).

**K Mart**

4. Instead of paying for the insertion of the advertising supplement, the newspaper was paid for distributing the advertising supplements.

5. Instead of bearing only the logo of the specific newspaper, the advertising supplements bear a logo which is preceded by the words "supplement to."

6. The advertising supplements are sometimes offered as free handouts to stores in addition to being distributed within the newspaper.

**Lewis**

4. The Argus was paid for its advertising services, but it produced the ads itself for the purpose of including them in the newspaper.

5. Lewis's advertising in the Argus bore only the Argus logo.

6. The Argus does pay sales tax on Lewis's advertising that is not distributed as a part of the newspaper, but which is delivered separately.

In my opinion the inserts owned by the Argus and delivered to subscribers are an integral part of the Argus Leader and therefore exempt.

HENDERSON, Justice (dissenting).

This dissent is respectfully tendered to the majority opinion; the concurrence in part/dissent in part of Chief Justice Wuest is not joined hereby, for the reason that this dissent is based upon a clear statutory exemption.

It is my opinion that the circuit court should be affirmed upon the basis that the Argus was rendering advertising services which are exempt under state law, namely, SDCL 10–45–12.1. Furthermore, the Department of Revenue undertook to implement this statute by its own administrative rule, namely, A.R.S.D. 64:06:02:03. The Argus, per state law and administrative rule cited above, is not liable for the assessment of $25,147 which it paid under protest, and has now rightfully petitioned the Department of Revenue for a refund. The administrative rule plainly states: "Charges for advertising in newspapers or magazines are not taxable."

The Department of Revenue also had its Guidelines ST–132, same to be used by taxpayers, accountants, and auditors, which provided in part: "The services of advertising is not within the services selected for taxation. Charges for advertising in newspapers, magazines or other publications are charges for service and therefore not taxable. Likewise, charges by advertising agencies for preparing and placing advertising in the media are not taxable."

The Department of Revenue must abide by its own rules and guidelines. The administrative rules have the force and effect of law. *Stellner v. Woods,* 355 N.W.2d 1, 3 (S.D.1984); *Thorsness v. Daschle,* 285 N.W. 2d 590, 591 (S.D.1979); *Corbly v. City of Colton,* 278 N.W.2d 459, 461 (S.D.1979).

Under SDCL 10–45–4.1, a service is defined as follows:

"Service" means all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve *predominantly the performance of a service as distinguished from selling property.* In determining what is a service, the intended use, principal objective or ultimate objective of the contracting parties shall not be controlling.... (Emphasis added.)

Argus' transaction with Lewis predominantly involved the performance of a service. It was not selling property. Argus is not in the business of selling property to advertisers; it sells advertisements to advertisers. Any activity which is a service under the last-mentioned statute is exempt as an advertising service by virtue of SDCL 10–45–12.1; as such, it is absolutely entitled to exemption status. *Welcome Wagon Int'l, Inc. v. South Dakota Dep't of Revenue,* 318 N.W.2d 5 (S.D.1982).

As this case pertains to charges for advertising services, and as our state law clearly exempts taxation for advertising services, it being the clear intent of the State Legislature to pass such a law, it is our duty to give meaning to the statutory exemption. Construction of a statute must be according to the manifest intent which is derived from the statute as a whole. *Western Surety Co. v. Mydland,* 85 S.D. 172,

179 N.W.2d 3 (1970). Therefore, I would affirm the circuit court.